**ADAMS, J.**

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| **DANTZ,** | ) | **CASE NO. 5:04CV60** |
| **Plaintiff,** | ) | |
| | ) | **JUDGE JOHN R. ADAMS** |
| v. | ) | |
| | ) | **ORDER** |
| **APPLE AMERICAN GROUP LLC, et al.,** | ) | **[Resolving Doc. 78]** |
| | ) | |
| **Defendants.** | ) | |

This matter comes before the Court on Defendant Apple American Group, LLC's Motion for Reconsideration of the denial of its Motion to Stay Court Proceedings and/or Compel Arbitration. In the Motion for Reconsideration, Apple American asks the Court to compel arbitration of Plaintiff Debra Dantz's Title VII sexual harassment and retaliation claims, and to stay these proceedings pending the arbitration's conclusion. Dantz has opposed the Motion. The Court has thoroughly reviewed Apple American's Motion, Dantz's Opposition, the parties' exhibits, pleadings, and applicable law.

For the reasons stated herein, it is hereby ORDERED that Apple American's Motion for Reconsideration [Doc. 78] is GRANTED IN PART. Specifically, the Court finds that the Sixth Circuit's decision in *Dantz v. American Apple Group, LLC*, No. 03-4128, 2005 WL 465253 (6th Cir. March 1, 2005) (unpublished order) compels the conclusion that Dantz assented to Apple American's dispute resolution program, including its provision for arbitration of employee claims against the company, when she continued to work for the company after receiving notice that participation in the program was a

condition of her employment. In light of the Sixth Circuit's decision, and under the Ohio Arbitration Act, Ohio Revised Code § 2711.02 (the "OAA") and the Federal Arbitration Act, 9 U.S.C. § 3 (the "FAA"), Dantz may not litigate her claims in a court of law, but rather must submit them to arbitration.

The Court also finds that dismissal in lieu of a stay of this case is appropriate because an arbitrator's decision would be final and binding. Accordingly, the Court further ORDERS that this case is DISMISSED.

## I. FACTS AND PROCEDURAL HISTORY

Apple American operates Applebee's Neighborhood Grill & Bar restaurants in locations across the country. Dantz was hired in July 2000 as a server at the Applebee's Chapel Hill location in Cuyahoga Falls, Ohio. She worked at Applebee's until August 25, 2004.

On October 1, 2001, Apple American Limited Partnership of Ohio ("Apple Ohio"), the predecessor-owner of the Chapel Hill Applebee's, adopted a broad, mandatory dispute resolution process (the "Program"). Strang Corporation developed and implemented the Program for Apple Ohio pursuant to a management agreement between the companies. The Program culminated in arbitration of employee claims against Apple Ohio. Under the Program, arbitration would be "final" and "binding".

On November 11, 2001, Apple Ohio sold the Chapel Hill Applebee's franchise to Apple American pursuant to an asset purchase. As of that date, Dantz became an employee of Apple American. Thereafter, Apple American continued the Program.

Apple American and Dantz disagree regarding when Dantz first received notice of the Program and the fact that assent to the Program and its provision for arbitration was a condition of her continued employment. The parties' respective accounts of the nature and timing of the notice provided are set forth

below.

Apple American claims that, in August 2001, posters announcing and summarizing the Program were hung in conspicuous places in the Chapel Hill Applebee's. The posters informed employees of the Program, explained each of its four steps, and advised that the Program would take effect on October 1, 2001.

Apple American further claims that, in addition to the posters, all employees were presented in September 2001 with a letter from Don Strang (President of Strang Corporation) and a dispute resolution summary pamphlet further explaining the Program. The Strang letter stated, "Your agreement to the program provisions, including arbitration, will be expressed by your continuing your employment with the Company from and after October 1, 2001 . . . and by the Company's mutual promise to follow the Program's provisions, including those governing mandatory, binding arbitration." Both Strang's letter and the summary pamphlet notified employees of an upcoming "Super Saturday" meeting at which the Program would be explained , and at which employees would have an opportunity to ask questions about the Program.

According to Apple American, Chapel Hill employees were required to attend a Super Saturday meeting on September 15, 2001. Each attendee received a Program Booklet explaining the Program and its terms.

The Program Booklet outlines a four-step process for employee dispute resolution, culminating in mandatory, binding arbitration. On the first page, in bold capital letters, the Booklet states:

3

> **THIS PROGRAM IS A CONDITION OF YOUR EMPLOYMENT AND IS THE MANDATORY AND EXCLUSIVE MEANS BY WHICH THOSE PROBLEMS MAY BE RESOLVED, SO READ THE INFORMATION IN THIS PROGRAM BOOKLET CAREFULLY.**

The Program Booklet goes on to note: "If either party pursues a legal claim covered by the Dispute Resolution Program in court by any means other than arbitration, the responding party shall be entitled to stay or dismissal of such action, the remand of such action to arbitration, and the recovery of all costs and attorney's fees and expenses related to such action." In another provision, the Booklet states, "This program will prevent you from filing a lawsuit in Court for individual relief for a legal claim subject to arbitration." The Booklet specifically provides that employee sexual harassment claims are subject to arbitration.

Apple American also distributed a separate, two-page "Agreement and Receipt for Dispute Resolution Program" ("Agreement"). The Agreement states, in part:

> MUTUAL PROMISE TO RESOLVE CLAIMS BY BINDING ARBITRATION. In signing this Agreement, both the Company and I agree that all legal claims or disputes covered by the Agreement must be submitted to binding arbitration . . . I understand and agree that by entering into this Agreement, I anticipate gaining the benefits of a speedy, impartial dispute resolution procedure. This procedure is explained in the Dispute Resolution Program Booklet, which I acknowledge I have received and read or have had an opportunity to read . . . .

Contrary to Apple American's account, Dantz claims that the first time she learned of the Program was on May 25, 2002, when a store manager told her that she had to sign the Agreement. On July 2, 2002, Dantz wrote on the two-page Agreement, at the place provided for her signature, "I cannot sign this as I would be lying. An attorney contacted me in regard to certain legal issues." She then signed and dated

4

the document.

Moreover, Dantz denies that posters explaining the Program were displayed at the Chapel Hill location in August 2001. She has testified that no posters were displayed until August 1, 2002.

Dantz also claims that she did not receive the Strang letter. She claims she never read the portion of the Strang letter stating, "Your agreement to the program provisions, including arbitration, will be expressed by your continuing your employment with the Company from and after October 1, 2001. . . ." Likewise, Dantz denies having received a Program summary pamphlet.

Dantz has alternately admitted and denied signing a sign-in sheet for the September 15, 2001 Super Saturday meeting. She claims that, even if she did sign in, she did not stay for the entire meeting, but rather left early to attend her daughter's cross-country meet. She does not recall that the Program was discussed at the meeting.

Finally, in this case and in related actions before Judge Dowd of this Court and the Sixth Circuit, Dantz has presented several different versions of when she received the Program Booklet, inclusive of its provision that arbitration of employee claims was a condition of her continuing employment. Dantz has represented at various points that the Booklet was placed in front of her at the September 15, 2001 Super Saturday meeting, that she never received the Booklet in 2001, that she received the Booklet in June 2002, that she did not receive the Booklet until August 2002, and, most recently in this case, that she did not receive the Booklet until 2003, after she had filed related case 5:03CV329 (Dowd, J.).

Case No. 5:03CV329 ("Dantz I") was removed from the Summit County Court of Common Pleas on February 21, 2003 and assigned to Judge Dowd. Dantz asserted claims against Apple Ohio and her supervisor, Michael Sanders, for violations of the federal Fair Labor Standards Act, violations of the Ohio

Minimum Fair Wage Standards Act, unjust enrichment, sexual harassment, negligent retention, retaliation, promissory estoppel, breach of implied contract, and spoliation of evidence.

The Dantz I defendants moved to stay proceedings pending arbitration. In her response to the motion to stay, Dantz conceded that she received the Booklet prior to October 1, 2001. Her response stated, "[I]n Fall 2001 Plaintiff's manager, Michael Sanders, placed before her a copy of 'Strang Corporation and Managed Companies Dispute Resolution Program Booklet.'[] The Booklet, dated 2001, laid out the dispute resolution program and then at the end, contained an 'Agreement and Receipt for Dispute Resolution Program'."

Judge Dowd construed the Dantz I defendants' motion as a motion to compel arbitration, and, without permitting discovery, granted the motion in an opinion dated July 21, 2003. The opinion states, in pertinent part:

> The Company asserts in its motion that the Program is a valid, binding and enforceable agreement to arbitrate all of the disputes raised by plaintiff's complaint. Although the Program was placed into effect almost a year after plaintiff began her employment, it is an enforceable agreement, according to the Company, because there was an offer and acceptance (mutual assent) supported by consideration.
>
> The Company asserts that it *offered* plaintiff, an at-will employee, continued employment subject to the terms of the Program. It gave her a copy of the Program, conducted a training session, and provided her with a cover memorandum inviting acceptance by way of continued employment. Plaintiff, according to the Company, manifested her assent to the Program by continuing to work at Applebee's, notwithstanding her refusal to sign [the Agreement] provided to her with the Program booklet.
>
> Plaintiff argues, in turn, that, although she did receive a copy of the Program, she refused to sign it when repeatedly asked by the Company to do so. She asserts that she was not required to quit her job in order to retain her legal rights. She argues that "Apple was put on notice that [she]

6

> did not voluntarily agree to forfeit her statutory and common law rights, nor her constitutional right to a jury trial." In her view, by allowing her to continue with her employment in the face of her refusal to sign onto the Program, the Company waived any right to apply the Program to her.
>
> Plaintiff's view has no merit. There is no requirement that an arbitration agreement be signed in order to be valid and enforceable. *Brumm v. McDonald & Co. Sec., Inc.*, 78 Ohio App. 3d 96 (Ohio App. 4, 1992). What is required to validate the arbitration agreement and make it contractual is an offer and acceptance, supported by consideration. Here, plaintiff, an at-will employee, manifested her assent in the very way that the Company requested, that is, by continuing her employment after October 1, 2001.

*Dantz v. Apple Ohio LLC, et al.*, 277 F. Supp. 2d 794, 800-01 (N.D. Ohio 2003) (footnotes omitted).

Rather than granting a stay, Judge Dowd dismissed Dantz I. He remanded to state court two counts against Sanders individually. Dantz subsequently appealed to the Sixth Circuit.

On appeal Dantz argued, among other things, that she did not agree to be bound by the terms of the Program. In her appellate brief, she claimed that she first became aware of the Program and received the Booklet in June 2002.

The Sixth Circuit rejected Dantz's arguments and held that she had agreed to submit her claims to arbitration by continuing to work for Applebee's after October 1, 2001. In an unpublished decision dated March 1, 2005, the court stated, in relevant part:

> The district court found that Apple made an offer for a unilateral contract, which Dantz accepted by performance. The Program booklet set out the terms of the arbitration agreement and made it an explicit condition of her employment. Strang's September 7 letter further set out the manner of acceptance – continuing employment after October 1, 2001. The district court held that "plaintiff, an at-will employee manifested her assent in the very way that the Company requested, that is, by continuing her employment after October 1, 2001." *Dantz*, 277 F. Supp. 2d at 801. On the facts in the record before us, we agree

7

> with the analysis of the district court. Mutual assent is manifested by Dantz's continued employment after having been told explicitly that the arbitration agreement was a condition of her employment. *Cf. Lake Land Employment Group of Akron, LLC v. Columber*, 101 Ohio St. 3d 242, 804 N.E.2d 27, 32 (2004) (noting that "an employer or ane employee in an at-will relationship may propose to change the terms of their employment relationship at any time. If, for instance, an employer notifies an employee that the employee's compensation will be reduced, the employee's remedy, if dissatisfied, is to quit.")

*Dantz*, 2005 WL 465253 at \*\*4.

In a footnote, the Sixth Circuit explained that it was immaterial when Dantz had received the Booklet, in light of the fact that she continued to work for Applebee's thereafter. Footnote five states:

> Mutual assent for the agreement to arbitrate would exist even under Dantz's version of the facts in her appellate briefs. According to Dantz, she was given the Program booklet in June 2002. The Program booklet made binding mandatory arbitration a condition of her employment. The Program covered all claims she had at the time of agreement, as well as any claims she might have in the future. Dantz continued to work for Apple after June 2002 and did not file suit in federal court until months later. Her mutual assent was expressed by her continued employment.

*Id.* at \*\*4, n. 5.

While Dantz I was pending on appeal, and before the Sixth Circuit issued its opinion affirming Judge Dowd's grant of the motion to compel arbitration, Dantz filed the instant action ("Dantz II"). Apple American removed the case from state court on January 12, 2004. The Dantz II complaint alleges claims against Apple American for sexual harassment and retaliation under Title VII.

On July 28, 2004, Apple American filed its Motion to Stay and/or Compel Arbitration in Dantz II. Dantz opposed the motion on September 8, 2004.

The Court held a hearing on Apple American's motion to compel arbitration on October 26, 2004, prior to the Sixth Circuit's decision on the appeal of Dantz I. The Court denied Apple American's motion

8

from the bench, stating that, on the record before it, a genuine issue of material fact existed regarding whether Dantz had assented to the Program's terms. The Court further indicated that, for reasons articulated for the record, collateral estoppel would not apply to bar a trial on the issue of mutual assent to the Program. Consequently, the Court ordered a trial on the limited issue of whether Dantz had agreed to arbitrate her claims in accordance with the Program's provisions.

Dantz was deposed in anticipation of the impending trial. In her deposition, Dantz testified that, contrary to her prior assertions, she had received the Program Booklet in August 2002.

Less than two weeks before the scheduled trial, the Sixth Circuit issued its decision on the appeal of Dantz I. In light of the Sixth Circuit's decision, the Court, at a pre-trial conference held on March 4, 2005, granted Apple American leave to file its Motion for Reconsideration of the Court's denial of its Motion to Stay and/or Compel Arbitration. The Court continued the trial pending a ruling on the Motion for Reconsideration.

Apple American filed its Motion for Reconsideration on March 18, 2005. Dantz opposed Apple American's motion. In an affidavit attached to her Opposition, Dantz testified that she never saw the Program Booklet until her lawyer asked her for a copy after Dantz I was filed in 2003. Her affidavit further states, "In my deposition I testified that I believed I had obtained the Booklet in 'approximately August 2002'; however, this date was off somewhat, and my review of notes after the deposition clarified the dates."

In light of the foregoing, the Motion for Reconsideration is ripe for adjudication. The Court's analysis is set forth below.

9

## II. ANALYSIS

In her Opposition to the Motion for Reconsideration, Dantz proposes several reasons why this Court should not enforce the Program's provision for mandatory arbitration of her sexual harassment and retaliation claims. Dantz argues that: (1) she did not agree to be bound by the terms of the Program; (2) Apple American cannot enforce a dispute resolution program that was developed by Strang Corporation for Apple Ohio; and (3) Apple American comes to the Court with "unclean hands". For the following reasons, Dantz's arguments lack merit.

### A. Mutual Assent

Dantz argues that principles of collateral estoppel do not apply and that Judge Dowd's decision in Dantz I does not preclude a trial on the issue of whether Dantz assented to the Program's provision for mandatory arbitration of her claims. In support of her argument, she states, among other things, that the issues were not fully and fairly litigated in Dantz I because Judge Dowd did not permit discovery prior to ruling on the motion to compel arbitration. As she did in Dantz I and in her appeal of Judge Dowd's decision, Dantz argues here that she did not agree to be bound by the Program's terms.

Plaintiffs' collateral estoppel argument is inapposite. The Court need not conduct a collateral estoppel analysis. Even if collateral estoppel does not apply, the Sixth Circuit's disposition of the appeal of Dantz I, which the court reached on facts virtually identical to those present here, compels the conclusion that, in this circuit, a plaintiff manifests assent to a dispute resolution program under circumstances like those in this case.

As the Sixth Circuit recognized: "Under Ohio law, a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Dantz*, 2005 WL 465253 at **4 (citations

and internal quotations omitted). "Ohio law requires mutual assent to form a valid contract." *Id*. " Mutual assent ordinarily takes the form of an *offer* or proposal by one party followed by an *acceptance* by the other party or parties." *Id*.

The Sixth Circuit went on to hold that Dantz manifested assent by continuing to work for Applebee's after having been told explicitly that the arbitration agreement was a condition of her employment. *Id*. According to the court, the critical issue is not when Dantz received the Program Booklet, but rather that she continued to work for Applebee's until August 2004 after she had received the Booklet and thereby had been informed that her continuing employment was conditioned upon her assent to, and participation in, the Program. *Id*. As such, the court concluded that Dantz manifested asset by performance, even if she had not obtained the Booklet until the summer of 2002, and despite the fact that she explicitly had refused to sign the Agreement. *Id*.

Dantz II involves a factual scenario almost identical to that presented to the Sixth Circuit. The facts in this case are not substantially changed from the facts of Dantz I. Even if this Court accepts all of Dantz's most recent factual assertions, including that she did not receive the Strang letter or read the portion of the letter stating that her "agreement to the program provisions, including arbitration, will be expressed by . . . continuing . . . employment with the Company from and after October 1, 2001 . . . ", the fact remains that Dantz received the Program Booklet in the summer of 2002 or in early 2003 (if not in 2001, as she originally claimed in Dantz I). The Program Booklet set out the terms of the arbitration agreement and made it an explicit condition of her employment. *Dantz*, 2005 WL 465253 at \*\*4. By continuing to work for Applebee's until August 2004, Dantz manifested her assent to the Program in the very way that Apple American intended, as reflected in the Program Booklet. *Id*. *See also Mitsubishi Motors Corp v. Soler*

11

*Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (U.S. 1985) (holding that courts are to examine the language of the arbitration contract in light of the strong federal policy in favor of arbitration and resolve any ambiguities in the contract or doubts as to the parties' intentions in favor of arbitration).

Moreover, the Court need not accept Dantz's assertion that she did not receive the Program Booklet until after Dantz I was filed in 2003. Dantz testified under oath in her deposition that she received the Booklet in the summer of 2002. It is well-established that a plaintiff may not create an issue of fact by filing an affidavit that conflicts with her prior deposition testimony. *See, e.g.*, *Ferguson v. Neighborhood Hous. Servs. of Cleveland, Inc.*, 780 F.2d 549, 551 (6th Cir. 1986).

In view of the foregoing, Dantz manifested her assent to the Program under any version of the facts that she has presented to Judge Dowd, the Sixth Circuit, or this Court. The Court next turns to Dantz's argument that Apple American lacks standing to enforce the Program.

### B. Standing

Dantz also contends that Apple American cannot enforce a dispute resolution program designed by Strang Corporation for Apple Ohio. She is mistaken.

First, Dantz argues that Strang Corporation had no power to bind Apple Ohio to the Program's terms. To the contrary, an agent's power to bind a principal to an arbitration agreement is well-established. *See, e.g.*, *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003) (holding that "non-signatories may be bound to an arbitration agreement under ordinary contract and agency principles").

Dantz further argues that Apple American cannot enforce the Program's mandatory arbitration provision because Apple American is not a party to any agreement to arbitrate. Dantz apparently thinks that, because the ownership of the Applebee's stores changed hands shortly after the Program was

12

instituted by Apple Ohio, she is not required to abide by the Program.

This argument also lacks merit. The record evidence reflects that Dantz's prior employer, Apple Ohio, sold its assets, including any rights under the Program, to Apple American. Apple American continued the Program after the acquisition. Under Dantz's own current version of the facts, she was presented with the Program Booklet after the ownership change and continued her employment thereafter. Thus, Apple American properly can enforce the Program in at least three ways: (1) as Apple Ohio's assignee by virtue of the asset purchase; (2) under the "successors" language of the Program Booklet, which on page one identifies the parties to the arbitration agreement as each employee and "the particular company listed above that actually provides the employee's employment", including Apple Ohio and "all successors and assigns" of Apple Ohio; and (3) by Apple American's own assent to be bound by the Program and its implementation thereof.

The Sixth Circuit's decision is clear that, under any of Dantz's conflicting versions of when she became aware of the Program, she is bound to follow the terms of the Program because she received a copy of the Booklet after she became an Apple American employee and elected to continue her employment thereafter. *Dantz*, 2005 WL 465253 at \*\*4. Accordingly, Dantz may not litigate her claims in this forum or in any other court, but rather must submit her claims to arbitration.

### C. Unclean Hands

Finally, Dantz vaguely argues that Apple American should not be permitted to enforce the Program because it has made "numerous deliberate misstatements" in this case or has "unclean hands". Dantz's accusations lack support in the record, and the Court rejects them as a basis for invalidating the parties' arbitration agreement.

### III. CONCLUSION

For all of the foregoing reasons, the Court ORDERS that Apple American's Motion for Reconsideration is GRANTED IN PART and compels arbitration of Dantz's claims. The Court further ORDERS that this case is DISMISSED and will not be stayed, as the Program provides that arbitration would be "final" and "binding". *See Orcutt v. Kettering Radiologists, Inc.*, 199 F. Supp. 2d 746 (S.D. Ohio 2002) (holding that dismissal rather than a stay is appropriate where an arbitrator's decision would be final and binding).

IT IS SO ORDERED.

 April 18, 2005               /s/ John R. Adams
Date                          John R. Adams
                              U.S. District Judge